**Keith V. NEWSOME and Betty Crook Knox, Plaintiffs,**

v.

**Charles B. WEBSTER, Sheriff of Richmond County, Georgia, Mark Albright, Pat Stahler, et al., Defendants.**

Civ. A. No. CV192–71.

United States District Court, S.D. Georgia, Augusta Division.

Feb. 3, 1994.

As Amended March 14, 1994.

---

**1462**

Stanley G. Jackson, Augusta, GA, for plaintiffs.

James Walton Ellison, Burnside, Wall, Daniel & Ellison, Augusta, GA, for defendants.

1. Defendants' Motion to Strike the Affidavit of Mike Howard, Defendants' Motion to Strike the Affidavit of John J. Lipsky; Defendants' Motion

**ORDER**

BOWEN, District Judge.

Pending in the captioned case are Defendant Charles B. Webster's Motion for Summary Judgment, Defendant Pat Stahler's Motion for Summary Judgment, Defendant Mark Albright's Motion for Partial Summary Judgment, various Motions to Strike filed by the Defendants,[1] and Defendants' Motion for Severance. The Motions for Summary Judgment are **GRANTED.** The Motions to Strike are **DENIED.** The Motion for Severance is **DENIED.**

## I. BACKGROUND

This case stems from the separate arrests of the above two Plaintiffs by Richmond County deputies and events alleged to have occurred during Plaintiffs' respective overnight stays in the Richmond County Jail. The Plaintiffs' arrests are unrelated; Plaintiffs joined their claims based on their contention that their alleged wrongful treatment reflects a pattern of abuse by the Richmond County Sheriff's Department. At the time of the events in question, Defendant Charles B. Webster was Sheriff of Richmond County, Defendant Mark Albright was a Deputy Sheriff of Richmond County, and Defendant Pat Stahler was a Deputy Sheriff of Richmond County.

During the early morning hours of January 5, 1991, Plaintiff Newsome and a companion travelled in Newsome's car on Highway 25 in Richmond County. Newsome was driving. Defendant Albright approached Newsome's vehicle in his patrol car and attempted to pull Newsome over by turning on his flashing blue lights. Newsome deposed that when he saw the blue lights he "panicked," fearing (for reasons unknown and unimportant to the Court) his wife's reaction if she found out he was in Augusta. (Dep. of Keith Newsome at 53–54.) Newsome stopped his car and, by his on account of events, "jumped out of that car, and I run like the devil, and I jumped over that fence." *Id.* at 55. A foot race ensued. Quickly

to Strike the Affidavit of Betty Knox; and Defendants' Motion to Strike the Supplemental Affidavit of Mike Howard.

thinking better of his decision to flee, Newsome stopped, whereupon Albright apprehended him.

The parties dispute whether Newsome resisted arrest once he stopped running and what degree of force Albright used to effectuate the arrest. Newsome contends he cooperated in the arrest but nevertheless received a "savage beating." (Compl. ¶ 8.) Defendant Albright contends that Newsome assaulted him. Albright maintains he used minimal force, only that degree of force reasonably necessary to arrest Newsome. The specificity of each side's factual allegations relative to Newsome's excessive force claim is sparse. That Plaintiff Newsome received at least some facial injuries in the transaction, primarily a black eye and scrapes on his nose, is clear, however. (*See* photo attached to Aff. of Keith Newsome.) Newsome alleges that his face was fractured, several bones were broken, and he has suffered and continues to suffer "post-traumatic seizures" as a result of the alleged beating. (Compl. ¶ 8.)

Albright transported Newsome to the Richmond County Jail. At the jail, Newsome refused to take a breathalyzer test.[2] Plaintiff contends that upon his refusal to take the breathalyzer test, Defendant Deputy John Doe, an unidentified deputy present at the jail, "grabbed ... Newsome and squeezed him so hard that he defecated, injuring and bruising his ribs, chest and abdomen, and ruining his slacks." (Compl. ¶ 7.) Plaintiff Newsome was incarcerated overnight in a holding cell. A staff nurse attempted to examine Newsome but he refused to allow her to treat him because "[s]he was nothing but a little old nurse," and he believed he needed X-rays. (Newsome Dep. at 66.) Newsome contends he was denied medical treatment. He admits refusing medical treatment by the nurse but maintains "he did not refuse to be transported to University Hospital for treatment...." (Pl.'s Br. Nov.

4, 1992, at 9.) Newsome was released on bond the day following his arrest.

On September 3, 1991, at approximately 2:30 a.m., Plaintiff Betty Crook Knox travelled in her car on Gordon Highway in Richmond County. From his patrol car, Defendant Stahler observed Knox's car weaving in and out of lanes on Gordon Highway and pulled her over. Plaintiff was cooperative with Deputy Stahler initially. After registering .28 on a field alco sensor device and being informed of her arrest, Knox's cooperation appears to have ceased. According to Defendant Stahler, Plaintiff Knox became very belligerent and insisted that he contact his supervisor on her behalf. At one point, Stahler maintains, Knox struck him in the face with her purse. Defendant Stahler contends that he "did not use any force whatsoever on the Plaintiff [Knox]." (Aff. of Pat Stahler ¶ 15.) While Knox does not controvert Stahler's allegation that she was uncooperative in the arrest, (Dep. of Betty Crook Knox at 35–36), the Complaint states that Stahler "severely attacked" her and "grabbed, bruised and [used] unnecessary force ... causing bruises and contusions on her arm." (Compl. ¶ 10.) Knox did not seek medical treatment of these alleged injuries following her arrest and detention. (Knox Dep. at 75.)

Stahler transported Knox to the Richmond County Jail. At the jail, Knox became more uncooperative and belligerent, or, as Knox described her behavior, "ugly and hateful." (Knox Dep. at 38.) Defendants allege that at one point, Knox, for no apparent reason and without provocation, accosted and struck a deputy present at the jail. Jail personnel confined Knox to a holding cell overnight. Knox alleges that the next morning an unidentified officer grabbed her while she was using the telephone and pulled her away from the telephone, thereby bruising her arm and neck.

Plaintiff Knox contends she was denied medical treatment by the jail personnel and refused transportation to a hospital.[3] Defen-

---

**2.** Newsome testified that he desired to take a blood test because he thought he could not blow up a balloon due to his facial injuries. (Newsome Dep. at 60.)

**3.** The Court notes that Knox's need for medical treatment, according to her deposition, stemmed

from a prior automobile accident wherein she broke her nose, not from the injuries she allegedly sustained at the hands of Defendant Stahler. Knox deposed that she failed to have the broken nose treated by a physician and that the untreated injury caused her to "feel sick" while in the holding cell. (Knox Dep. at 38.)

dants contend Knox refused medical treatment. By affidavit, Janice F. Brown, Knox's processing officer at the jail, states that Knox "had absolutely no physical signs of injury" upon her arrival at the jail (Aff. of Janice F. Brown ¶ 5) and refused to sign an authorization for medical treatment form. The form, completed by Brown, is attached to Brown's sworn affidavit and indicates on the inmate's signature line that Knox "refused to sign." Also attached to Brown's affidavit is a copy of the jail's screening form on Knox, on which Brown wrote: "Refused to answer. States she does not want jail medical people to touch her."

Plaintiffs brought this federal civil rights action pursuant to 42 U.S.C. § 1983 against each Defendant in his individual and official capacity. Plaintiffs allege the Defendants' actions deprived them of unspecified constitutional rights. Plaintiffs allege supplemental state law claims for negligence, assault and battery. Unfortunately, the Complaint is too disorganized to ascertain which Defendant, and in what capacity, is being sued for each claim. As best the Court can glean from the entirety of the record, Plaintiffs intend in this action to assert the following claims against the Defendants: (1) § 1983 claims by Plaintiff Newsome against Defendant Albright for Albright's alleged use of excessive force and denial of medical treatment, and supplemental state law claims for assault and battery; (2) § 1983 claims by Plaintiff Knox against Defendant Stahler for Stahler's alleged use of excessive force and denial of medical treatment, and supplemental state law claims for assault and battery; and (3) a § 1983 claim by Plaintiffs against Defendant Webster for alleged inadequate training and disciplinary procedures relative to the use of force by his deputies.[4]

Defendants Webster and Stahler seek summary judgment against Plaintiffs on all claims asserted against them. Defendant Albright seeks partial summary judgment, contending he is entitled to judgment as a matter of law on Plaintiff Newsome's denial of

medical treatment claim. Defendants also move the Court to strike certain affidavits Plaintiffs filed in opposition to the motions for summary judgment (*see* note 1, *supra*), contending portions of these affidavits are inadmissible as evidence. Finally, Defendants seek severance of Plaintiffs' respective claims, contending Plaintiffs are improperly joined in this action.

## II. ANALYSIS

### A. Defendants' Motions to Strike

■ Defendants' objections to the content of the subject affidavits, whatever merit the objections have, are inappropriately asserted as motions to strike. "[A] motion to strike is only appropriately addressed toward matters contained in the *pleadings,* Fed.R.Civ.P. 12(f)," *Smith v. Southeastern Stages, Inc.,* 479 F.Supp. 593, 594 (N.D.Ga.1977) (emphasis added), but the materials which Defendants seek to strike are not contained within the pleadings, *see* Fed.R.Civ.P. 7(a) (identifying complaints, answers, and replies to counterclaims as "pleadings"). "Regardless of the practice followed in other forums, this Court does not sanction the use of a rule 12(f) motion for the advancement of objections to [materials] filed in support of a motion." *Southeastern Stages,* 479 F.Supp. at 594; *see* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (2d ed. 1990). "It is sufficient for the party opposing the motion to register its objection to the movant's [materials] by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon these objections in consideration of the motion." *Southeastern Stages,* 479 F.Supp. at 594 (emphasis added). "The same rule applies with regard to [materials] in opposition to a motion." *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 595 F.Supp. 1442, 1443 (N.D.Ga. 1984), *rev'd on other grounds,* 788 F.2d 1500 (11th Cir.1986). Accordingly, Defendants' Motion to Strike the Affidavit of Mike How-

---

4. The claims against the deputy defendants in their official capacities do not require analysis apart from that of Plaintiffs' claims against the Sheriff in his official capacity since the alleged unlawful policy, custom, or practice is that of Sheriff Webster, the County policy maker with respect to the Richmond County Sheriff's Department's training and disciplinary procedures regarding use of force.

ard, Defendants' Motion to Strike the Affidavit of John J. Lipsky, Defendants' Motion to Strike the Affidavit of Betty Knox, and Defendants' Motion to Strike the Supplemental Affidavit of Mike Howard are DENIED.

## B. Defendants' Motions for Summary Judgment

### 1. *Requirements for Summary Judgment*

The court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■■ "The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *nonmoving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the nonmoving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

■■ If—and *only* if—the moving party carries the initial burden, then the burden shifts to the nonmoving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The nonmoving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the nonmoving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the nonmoving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the nonmoving party—has carried the respective burden set forth above. *See Clark*, 929 F.2d at 609 n. 9.

■■ Plaintiffs' federal claims are asserted pursuant to 42 U.S.C. § 1983. Section 1983 provides a remedy for deprivations of federal rights. *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir.1987). Section 1983 requires proof of a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States and that the deprivation was at the hands of a person or persons acting under color of law. *Id.* When a local governmental entity is a defendant in a § 1983 action, the plaintiff bears the additional burden of proving the constitutional deprivation is the product of a custom, policy or practice of the governmental entity. *Id.*

The Court must first identify what provisions of the Federal Constitution are invoked by Plaintiffs' allegations, which concern gratuitous force against an arrestee and denial of medical treatment to a pretrial detainee.

■ A claim that an arresting law enforcement officer used excessive force is analyzed under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), which proscribes "unreasonable" seizures.[5] Whether an arrest was reasonable is determined objectively, "in light of the facts and circumstances confronting [the arresting officer], without regard to [his or her] underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872; *see also Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985); *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1502 (11th Cir.1985).[6]

■ A pretrial detainee's denial of medical care claim is analyzed under the due process clause of the Fourteenth Amendment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). The standard in this circuit applicable to such claims is whether the defendant was "deliberately indifferent" to the plaintiff's medical needs. *Hamm v. Dekalb County*, 774 F.2d 1567, 1574 (11th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986) (adopting the Supreme Court's standard for Eighth Amendment claims in *Estelle v. Gam-*

*ble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). The deliberate indifference standard is met by proving the defendant "fail[ed] to provide prompt attention to [medical] needs by delaying necessary medical treatment for nonmedical reasons or by 'proving a policy of deficiencies in staffing or procedures such that the [pretrial detainee] is effectively denied access to adequate medical care.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.1988) (quoting *Anderson v. City of Atlanta*, 778 F.2d 678, 686 n. 12 (11th Cir.1985)).

■ A sheriff may not be held liable under a theory of *respondeat superior* in a § 1983 action for acts of his deputies. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). A sheriff can be held personally liable under § 1983 only if he "participate[d] directly in acts constituting a constitutional violation, or if the challenged actions are causally connected to a constitutional violation." *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir.1992). He can be held liable in his official capacity only upon the plaintiff's showing of a "policy or custom, whether made by [the government's] lawmakers or by those whose edicts or acts may fairly be said to represent official policy," *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, and that such policy or custom was the "moving force" of the deprivation of the plaintiff's

---

**5.** A "seizure" that triggers Fourth Amendment protection obtains where the government "by means of physical force or show of authority … in some way restrained the liberty of a citizen[.]" *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889 (1968). Plaintiffs' arrests were "seizures" subject to Fourth Amendment protection.

**6.** Besides their arrests, both Plaintiffs allege excessive force against them at the Richmond County Jail. The law is unsettled whether a pretrial detainee's claim of excessive force is properly analyzed under the Fourth Amendment's "reasonableness" standard. *See Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10; *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 636, — L.Ed.2d — (1993); *Wright v. Whiddon*, 951 F.2d 297, 300 (11th Cir.1992). It is clear, however, that "the Due Process Clause [of the Fourteenth Amendment]

protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10. A due process analysis of an excessive force claim requires a showing, generally speaking, that the defendant intended with the challenged action to inflict punishment on the plaintiff. *See generally Bell v. Wolfish*, 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979); *see also Valencia v. Wiggins*, 981 F.2d 1440, 1445–46 (5th Cir.1993), *cert. denied*, — U.S. —, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993). The Court will not analyze Plaintiffs' respective allegations of excessive force as pretrial detainees against Albright and Stahler, however, beyond noting that there is no dispute that Defendants Albright and Stahler were not involved in the alleged use of excessive force against Plaintiffs at the jail. As a matter of law, the named Defendants could not be held liable under § 1983 for the alleged wrongdoing. Plaintiffs fail to identify the proper defendants.

constitutional rights, *id.* *See also Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Vineyard,* 990 F.2d at 1211–14. Plaintiffs allege a "policy" of inadequate training and disciplining deputies regarding use of force. To inculpate the Sheriff under § 1983 in his individual or official capacity, Plaintiffs must show that Sheriff Webster was "deliberately indifferent" toward Plaintiffs' constitutional rights with respect to the training and disciplinary procedures implemented at the Richmond County Sheriff's Department. *See Canton,* 489 U.S. at 388 n. 7, 109 S.Ct. at 1204 n. 7.

### 2. *Defendant Webster's Motion for Summary Judgment*

■ Defendant Webster argues that Plaintiffs have failed to meet their burden of proof at summary judgment. Defendant Webster disavows prior knowledge of or participation in the subject incidents in his personal affidavit, tendered in support of his motion. His affidavit also thoroughly reviews the Richmond County Sheriff's Department's training and disciplinary procedures relative to the use of force and convincingly establishes their adequacy.

Plaintiffs concede Defendant Webster had no prior knowledge of or involvement in the subject incidents, (Pl.'s Resp.Def.'s Stat.Undisp.Mat.Facts and Concl.Law ¶ 6), but maintain he "did or should have had knowledge of the fact that his policies and procedures pertaining to the use of force were inadequate and that the enforcement of discipline against officers using excessive force was not uniformly applied." *Id.* In support of their contentions, Plaintiffs rely on affidavits by Mike Howard, as well as their own personal affidavits.

Mr. Howard, a self-proclaimed expert in police procedures, (Aff. of Mike Howard, Oct. 23, 1992, ¶ 2), states in his first affidavit:

> With a reasonable degree of certainty in my field, it is my opinion that the Defendant Webster and the Richmond County Sheriff's Department has a [sic] unwritten custom and policy which condones and po-

tentially encourages the excessive and unnecessary use of force by its officers and deputy sheriffs. The customary policy that is generally practiced is on complaints of excessive use of force that remedial training and supervision is not required and disciplinary action is not taken against the officers involved thereby encouraging the repetition of such actions.

*Id.* ¶ 6. To support his opinion, Howard attaches to his affidavit a two page list of 17 enumerated, summarized incidents, which, according to Howard, "is a list of different incidents which occurred pertaining to the excessive use of force while the Defendant Webster was the Sheriff of the Richmond County Sheriff's Department." *Id.* ¶ 3. In his supplemental affidavit, Howard elaborates on alleged instances of excessive force by Richmond County deputies and the alleged non-existent or non-uniform disciplinary action taken against the offenders. Attached to Howard's supplemental affidavit are unauthenticated, uncertified copies of various police reports, similar investigative reports, personal statements, and one affidavit, that of John P. Lipsky.

As Sheriff Webster's affidavit rebuts each and every operative allegation of the Complaint implicating him in any alleged use of excessive force, the burden of proof is Plaintiffs' to raise with admissible, competent evidence a triable factual issue. Fed.R.Civ.P. 56(e). Plaintiffs do not meet this burden. Howard's affidavits and attached documents are woefully insufficient to support the grave allegations in the Complaint against Sheriff Webster. Although the collective volume of this "evidence" is significant, it nonetheless is virtually useless as opposition to Webster's properly supported motion for summary judgment because Howard's legal conclusions, his personal summary of 17 incidents purportedly involving inordinate force by Richmond County Sheriff's deputies, and the "supporting" documentation, are all inadmissible. Fed.R.Civ.P. 56(e); *see generally* 10A Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure,* § 2722 at 57–58 (2d 1983).

Moreover, the stack of documents attached to Howard's supplemental affidavit—were

any of these documents admissible as tendered—do not provide a basis upon which a fair-minded jury could find in favor of Plaintiffs on their allegations against Sheriff Webster. The reports and personal statements merely reflect that Richmond County Sheriff's deputies, like police officers nationwide, are at times subject to various sorts of physical confrontation in carrying out their duties. Evidence of fights, skirmishes, affrays, or other possible use of force, *without more,* would not enable a reasonable jury to conclude that "excessive" force, as defined for purposes of the Fourth Amendment, was ever used. Plaintiffs' evidence of random, isolated instances of force—were it admissible—is circumstantial, speculative, and of little or no weight in determining the adequacy of Sheriff Webster's training and disciplinary procedures.

Lipsky's skeletal affidavit likewise does not demonstrate the existence of a material factual issue. Although he swears that he was "beaten up" and had his face "slammed into the trunk of [a] car" when he was arrested for driving under the influence of alcohol by a Richmond County deputy, his sworn statement does not give sufficient facts relative to the arrest to ascertain whether the force used was excessive under the Fourth Amendment, much less to implicate the Sheriff on the basis of his methods of training and disciplining deputies. Similarly, Plaintiff Knox's conclusory statements in her affidavit—for example, that "I know personally of many instances of police brutality by the Richmond County deputies and jailers which have not resulted in any disciplinary action against the deputy using excessive or brutal force," (Aff. of Betty Crook Knox ¶ 5)—would not alone permit a reasonable jury to infer that Sheriff Webster was deliberately indifferent to Plaintiffs' constitutional rights

in training and disciplining his deputies regarding the use of force. Newsome's affidavit fails to mention excessive force.[7]

■ As to Plaintiffs' negligence claim, Defendant Webster is protected under state law by the doctrines of sovereign and official immunity. Sovereign immunity, unless waived, bars the negligence claim against Sheriff Webster in his official capacity. *See* Ga. Const. (1983) Art. I § 2, ¶ 9. Sovereign immunity is a privilege, not an affirmative defense, and thus waiver of sovereign immunity must be proven by Plaintiffs. *Georgia Dept. of Human Resources v. Poss,* 263 Ga. 347, 434 S.E.2d 488 (1993); *Kelleher v. State of Ga.,* 187 Ga.App. 64, 369 S.E.2d 341 (1988). Plaintiffs Newsome and Knox show no basis for waiver. Official immunity shields Sheriff Webster from personal liability for his discretionary acts. *See generally Hennessy v. Webb,* 245 Ga. 329, 330, 264 S.E.2d 878 (1980); *Partain v. Maddox,* 131 Ga.App. 778, 281, 206 S.E.2d 618 (1974). The training and disciplining of deputies regarding the use of force are matters within the Sheriff's discretion. The Sheriff is thus immunized in his official and individual capacities from Plaintiffs' negligence claim as a matter of law. Defendant Webster's Motion for Summary Judgment is **GRANTED.**

### 3. *Defendant Stahler's Motion for Summary Judgment*

■ Defendant Stahler argues that qualified immunity insulates him from liability on Plaintiff Knox's federal claims against him. "Qualified immunity" protects public officials from individual liability for discretionary acts that do not violate "clearly established statutes or constitutional rights of which a reasonable person would have known." *Harlow*

---

**7.** Although Plaintiffs do not reference their deposition testimony in opposition to summary judgment, the Court notes that this evidence would not sustain the Plaintiffs' burden of proof either. In her deposition, Knox alleges a pattern of mistreatment of inmates at the Richmond County Jail. Granted, from her deposition it is clear Knox speaks from experience on the Richmond County Jail through numerous prior arrests, her bald allegations of excessive force—for example, "[E]very time I was ever arrested, I was always being manhandled, and I'm a girl. And at that

time when I was a drug addict, I probably didn't weigh 80 pounds." (Knox Dep. at 51)—assumed true, do not approach excessive force as defined for purposes of the Fourth Amendment, or otherwise evidence deliberate indifference by Sheriff Webster. The only possible evidence of a single instance of excessive force is found in the deposition of Plaintiff Newsome; but his deposition provides no evidence of deliberate indifference by Sheriff Webster in training and disciplining deputies.

*v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Due to the expense and diversion of energy attendant to defending a lawsuit, however, qualified immunity is protection from *suit,* not just liability. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Immunity is "effectively lost if a case is erroneously permitted to go to trial," *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); hence, the plaintiff's burden of proof to overcome qualified immunity at summary judgment is stringent. "[T]o defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendants acts." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

■ Knox's excessive force claim, based on her account of the facts, is inane. In stark contrast to the Complaint's farcical allegation that Defendant Stahler "severely attacked" Knox, in her deposition Knox ingenuously described the "attack" as follows:

> [Officer Stahler] proceeded to take me by the arm and pull me around to the [patrol] car.... He opened up the door, and told me to get in.... And he kind of took my arm, and my belt on my dress got hung on the door.... And he proceeded to help me get in the car by taking his hand, more or less, and pushing it on my head. And when he did, somehow or another his finger came down and caught the corner of my eye (indicating). He was a little rough, very rude. Hateful, if you want to know the truth.

(Knox Dep. at 35–36.) She alleges that as a result of this use of "force," she suffered a black eye and bruises on one arm. *Id.* at 39. Assuming the truth of her deposition testimony—that Stahler was "a little rough" and "very rude" or "hateful," the inadvertent finger in her eye, a black eye and bruised arm—Stahler's conduct does not sound in constitutional tort, or even close to it. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates [an arrestee's] constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Although the implied allegation that Stahler dealt Plaintiff Knox an unnecessary beating during a DUI arrest sounds like a constitutional tort, Knox's candid deposition testimony gives her away. In analyzing an assertion of qualified immunity, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793. Since Plaintiff Knox's allegations in her deposition are not of a constitutional deprivation, qualified immunity shields Defendant Stahler from suit on Knox's excessive force claim as a matter of law. *Id.*

■ Knox's denial of medical treatment claim is equally baseless. Stahler, the arresting officer, had nothing to do with Knox's medical care at the jail and as a matter of law would not be accountable under § 1983 had she been denied proper medical care. In any event, Knox provides no evidence, just repetitious allegations, that she was denied proper medical treatment while in custody. Her undisputed insolent behavior at the jail gives credence to Officer Brown's affidavit and attached forms indicating Knox refused medical treatment.

For the same reasons discussed above relative to the Sheriff, as a matter of law Defendant Stahler is shielded by sovereign and official immunity from any liability on Plaintiff Knox's state law claims. Defendant Stahler's Motion for Summary Judgment is **GRANTED**.

### 4. *Defendant Albright's Motion for Partial Summary Judgment*

Defendant Albright seeks summary judgment on Plaintiff Newsome's claim that he was denied medical care. Like Plaintiff Knox's similar claim against Defendant Stahler, Plaintiff Newsome fails to allege a constitutional cause of action against Albright for denial of medical care because even had it

happened, Albright, the arresting officer, would not be responsible. Moreover, not unlike Knox's claim, there is no evidence before the Court that Newsome was denied proper medical care. Newsome concedes he refused medical treatment at the jail. Incredibly, he asserts this claim anyway. His unsupported allegation that he needed but was refused transportation to a hospital is not evidence that anyone was "deliberately indifferent" to his medical needs. Defendant Albright's Motion for Partial Summary Judgment is **GRANTED.**[8]

### C. Motion For Severance

Having finally disposed of Plaintiff Knox's federal and supplemental state law claims, Defendants' motion to sever these claims from that of Plaintiff Newsome's claims is **DENIED** as moot.

### III. SUMMARY

Defendant Webster's Motion for Summary Judgment is **GRANTED.** Defendant Stahler's Motion for Summary Judgment is **GRANTED.** Defendants Webster and Stahler are **DISMISSED** from the case. The clerk is instructed to **ENTER FINAL JUDGMENT** on Plaintiffs' Complaint as to Defendants Webster and Stahler. Defendant Albright's Motion for Partial Summary Judgment is **GRANTED.** Defendants' Motion to Strike the Affidavit of Mike Howard is **DENIED.** Defendants' Motion to Strike the Affidavit of John J. Lipsky is **DENIED.** Defendants' Motion to Strike the Affidavit of Betty Knox is **DENIED.** Defendants' Motion to Strike the Supplemental Affidavit of Mike Howard is **DENIED.** Defendants' Motion for Severance is **DENIED.**

8. The Court notes that Defendant Albright's assumption that he *cannot possibly prevail at summary* judgment on Newsome's excessive force claim is erroneous. Defendant Albright states:
The only claim set out in plaintiff's complaint that the defendants are not seeking summary judgment [sic] is on plaintiff Newsome's claim of excessive force against the defendant Albright. This defendant [Albright] concedes that he *could not prevail* on a motion for summary judgment on that particular claim in view of the fact that the burden is on the moving party on such a motion. However the

Plaintiff Newsome's remaining claims will promptly proceed to trial. The issues to be tried are Plaintiff Newsome's § 1983 claim against Defendant Albright for Albright's alleged use of excessive force in arresting Newsome and Newsome's supplemental state law claims for assault and battery.

defendant Albright contends that when the burden *shifts to the plaintiff* at trial, then he may be entitled to a directed verdict in his favor.
(Def.s' Br. Oct. 16, 1992, at 3.) Contrary to Albright's assessment of the burden of proof, the nonmovant plaintiff bears the burden at summary judgment to overcome qualified immunity by affirmatively demonstrating that *no* reasonable officer in the defendant's shoes would have thought the acts complained of were constitutional. *See Post,* 7 F.3d at 1557.