**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, STEAMSHIP CLERKS LOCAL 1624, AFL–CIO, and International Longshoremen's Association, Container Maintenance Refrigeration Repair Employees Local 1970, AFL–CIO, Plaintiffs,**

v.

**VIRGINIA INTERNATIONAL TERMINALS, INC., Hampton Roads Shipping Association, Ceres Marine Terminals, Inc., Sea–Land Service, Inc., Edward L. Brown, and International Longshoremen's Association, Defendants.**

No. 2:95cv787.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 7, 1995.

Thomas F. Hennessy, III, SuAnne Leigh Hardee, Hardee & Hennessy, P.C., Chesapeake, VA, for Plaintiffs.

Thomas Michael Lucas, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Defendants Virginia International Terminals, Inc., Hampton Roads Shipping Association, Ceres Marine Terminals, Inc., and Sea–Land Service, Inc.

Robert J. Attaway, Haight, Garner, Poor & Havens, New York City, for Defendant Sea–Land Service, Inc.

C. Arthur Rutter, Jr., Rutter & Montagna, Norfolk, VA, for Defendants Edward L. Brown and International Longshoremen's Association.

Thomas W. Gleason, Gleason & Matthews, New York City, for Defendant International Longshoremen's Association.

### MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiffs, International Longshoremen's Association, Steamship Clerks Local 1624 AFL–CIO ("Local 1624") and International Longshoremen's Association, Container Maintenance Refrigeration Repair Employees Local 1970 AFL–CIO ("Local 1970"), filed this action on July 31, 1995, under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover for alleged breaches of Collective Bargaining Agreements ("CBAs") between themselves and Defendants Virginia International Terminals, Inc. ("VIT"); Hampton Roads Shipping Association ("HRSA"); Ceres Marine Terminals, Inc. ("Ceres"); and Sea–Land Services,

Inc. ("Sea–Land") (collectively "the Employer Defendants").[1] In addition, the complaint seeks damages arising from Defendant Edward L. Brown's alleged breach of the duty of fair representation imposed on him as an officer of the International Longshoremen's Association ("ILA"), by 29 U.S.C. § 501(a), and from the ILA itself.[2] The Court has jurisdiction to hear this federal question involving a labor agreement, pursuant to 28 U.S.C. § 1331. The matter currently is before the Court for resolution of two pending pre-trial motions, the Employer Defendants' motion for summary judgment and the Plaintiffs' motion to strike the Employer Defendants' reply brief and affidavits. However, a review of the nature of the case will simplify later analysis on these motions.

## I. NATURE OF THE CASE

Plaintiffs are both local union chapters and signatories to a "Master Agreement" which governs the relationship between the local ILA unions and the Employer Defendants. Complaint ¶¶ 13, 14; Affidavit of Lynn Tarkenton ¶ 2. Plaintiffs also entered into separate CBAs with the Employer Defendants on December 1, 1990, which remained in effect throughout the relevant time period. Complaint ¶¶ 15–18. Both CBAs include provisions establishing the standard day (8:00 am to 5:00 pm), during which union employees are to be compensated at a "straight time" rate of pay. Id. The Master Agreement also provides for a flexible start and stop time for union members employed at the gates of terminals, such that shifts from 7:00 am to 11:00 am, and from 12:00 noon to 4:00 pm can be scheduled at the straight time rate. Tarkenton Aff. ¶ 4. Outside of this standard day, union members are entitled to a premium for their work. In addition, the Master Agreement provides for a fixed number of employees to perform each craft necessary for the operation of the gates. Complaint ¶¶ 13, 14.

At some point during 1994, Defendant VIT, through its Director of Operations and Labor, Lynn Tarkenton, began exploring the possibility of instituting a more flexible schedule for union employees manning the gates at their facilities ("the flex-time proposal"). Specifically, Tarkenton sought agreement of the local unions to permit flex-time schedules which would begin at 9:00 am and last until 6:00 pm, in order to better serve the carriers which utilize the VIT terminals. The employees covered by the proposed flex-time modifications included members of both Local 1624 and Local 1970, Plaintiffs in this action. Tarkenton exchanged several letters and held several meetings with Plaintiffs and with Defendant Brown, and other ILA Locals. Tarkenton Aff. ¶¶ 4–7. The Employer Defendants ultimately implemented the flex-time schedule for their staffing needs with the result that members of Local 1624 and Local 1970 are now compensated at straight-time wages for hours formerly considered overtime under the original terms of their respective CBAs. In addition, the more flexible schedule has increased the total number of union members sharing the work at each gate, resulting in fewer overtime hours for union members. Complaint ¶¶ 23–25.

The Employer Defendants assert that the flex-time proposal was properly approved by the ILA's Wage Scale Committee, at a meeting on January 5, 1995, and thus its implementation was in accordance with the terms of both the Master Agreement and the CBAs. Plaintiffs vigorously dispute that assertion. The principal points of disagreement between the parties involve the presentation of the flex-time proposal to the Wage Scale Committee, which was charged with approving it for the ILA and its Locals, and with the subsequent presentation of the dispute to the ILA/HRSA Contract Board, the arbitration body which all parties concede is charged with resolving disagreements relat-

---

**1.** Defendant HRSA is not an employer *per se,* rather it is a multi-employer bargaining association which is signatory to the agreements central to the present dispute. *See* Affidavit of Roger Giesinger ¶ 2. The HRSA is also alleged to have breached those agreements giving rise to Plaintiffs' damages.

**2.** Another claim, alleging a breach of the ILA Constitution, involves only Local 1624 as Plaintiff, and the ILA as Defendant. The ILA, by counsel, answered the entire complaint on August 22, 1995, and has filed no dispositive motions since then.

ed to the CBAs and the umbrella Master Agreement. Complaint ¶ 40–43; Tarkenton Aff. ¶ 3.

The Employer Defendants filed a motion for summary judgment on August 28, 1995, to which Plaintiffs responded on September 11, 1995. On September 15, 1995, the Employer Defendants filed a reply to Plaintiffs' response brief. Plaintiffs moved to strike the reply pursuant to Rule 12(f) of the Federal Rules of Civil Procedure on September 18, 1995.[3]

## II. PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' REPLY

Before considering the Employer Defendants' summary judgment motion, the Court will take up Plaintiffs' motion to strike the Employer Defendants' reply brief and its accompanying affidavits and exhibits. Although styled a reply, the Employer Defendants' memorandum does not challenge or even address any matters raised in Plaintiffs' response. Instead, the Employer Defendants report the proceedings of a subsequent meeting of the Contract Board, which was held on September 5, 1995, six weeks after this action was filed. Essentially, the argument presented in their reply brief amounts to an additional ground in support of their motion for summary judgment. They assert that the subsequent vote of the Contract Board renders moot any previous impropriety in the Contract Board's earlier decision. For the reasons set forth below, the Court does not agree.

### A. Standard of Review

■ Rule 12(f) permits the court, on motion of either party, to strike "from any *pleading* any insufficient defense or redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis added). Plaintiffs have attempted to use such a motion to strike Employer Defendants' reply brief and accompanying affidavits. Briefs and affidavits, however, are not pleadings.

*See* Fed.R.Civ.P. 7(a) (defining pleadings as complaints, answers and replies to counterclaims); *Newsome v. Webster*, 843 F.Supp. 1460, 1464 (S.D.Ga.1994) (motion to strike not appropriate to challenge affidavits); *Welch v. Board of Directors*, 146 F.R.D. 131, 138–39 (W.D.Pa.1993) (same holding as *Newsome*). The filing of a motion to strike, therefore, is not a proper way to challenge the Employer Defendants' responsive filing. *See, e.g., Newsome*, 843 F.Supp. at 1464 (denying motion to strike affidavits); *Board of Educ. v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D.Ill.1982) (memoranda are not pleadings thus motion to strike footnote was improper); *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 683 (D.Ariz.1993) (Rule 12(f) cannot be used to strike a response to a motion to dismiss). *But see, Simmons v. Al Smith Buick Co.*, 841 F.Supp. 168, 170 (E.D.N.C.1993) (striking a brief which was not permitted by local rules).

■ In addition, even a properly made motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted. *First Financial Sav. Bank v. American Bankers Ins. Co.*, 783 F.Supp. 963, 966 (E.D.N.C.1991); *United States v. Fairchild Indus. Inc.*, 766 F.Supp. 405, 408 (D.Md.1991).

### B. Analysis

■ As stated above, Plaintiffs' motion to strike is not a proper method for challenging the Employer Defendants' reply. For that reason, their motion to strike is **DENIED.** However, whether the reply is stricken or not is immaterial, because as Plaintiffs correctly assert, the additional argument made in the reply is irrelevant to the determination of this summary judgment motion. As long as a party opposing a motion or filing registers its objections to the movant's materials by way of submitting material in opposition, the Court will implicitly, if not explicitly rule on these objections in deciding the motion. *Newsome*, 843 F.Supp. at 1464.

■ In this case, even if the Employer Defendants were able to prove that the Sep-

---

**3.** In addition to the motions under consideration, Plaintiffs have moved to disqualify counsel for Defendants Brown and ILA, and Defendant Brown has moved to dismiss the complaint against him for failure to state a claim. The

determination of the motion to disqualify is currently pending before another judge, and Defendant Brown's motion to dismiss cannot be addressed until the issue of disqualification is determined, as new counsel may be required.

tember 5, 1995, meeting was conducted fairly, the Contract Board's affirmance of the March 9, 1995, decision does not affect the viability of the complaint in this action. Plaintiffs have requested the Court to determine and declare the parties' rights under the various agreements governing their relationship, and award damages resulting from the allegedly improper approval of the flex-time proposal, which has been in place since March of 1995.[4] Dissatisfied with the implementation of the flex-time proposals, Plaintiffs first had an obligation to pursue their contractual remedies. Believing these remedies were improperly administered, they sought relief in this Court. If the Court concludes that the alleged breaches did occur, a subsequent meeting of the Board which "approves" the improperly conducted proceedings does not relate back to cure the earlier defects.[5] Simply put, the resolution of the Employer Defendants' motion for summary judgment turns on the union's conduct during meetings held in March and June of 1995. The Court concludes, therefore, that consideration of a third Contract Board meeting, held after this action was filed, does not alter the outcome of the present motion.

Accordingly, although Plaintiffs' motion to strike the Employer Defendants' reply brief and its accompanying exhibits and affidavits is **DENIED**, the argument raised in the reply is irrelevant to the issues presently before the Court, and will not be addressed in the analysis of the Employer Defendants' motion for summary judgment.[6]

## III. EMPLOYER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Employer Defendants moved for summary judgment on August 28, 1995. In support of their motion they filed a memorandum and the affidavits of Lynn Tarkenton, VIT Director of Operations and Labor; Roger Giesinger, Chief Negotiator for Defendant HRSA; and Dennis Weaver, Vice President of Defendant Ceres. The Employer Defendants assert two theories in support of their motion. First, they argue that Plaintiffs' claim is time-barred by the applicable six-month statute of limitations period. Second, they contend that the final determination of the Contract Board regarding the change in flex-time hours is binding on the parties and not subject to review by this Court.

Plaintiffs filed a memorandum in opposition along with the affidavits of Charles Capps, Melvin Sidwell, and Thomas Hennessy, Plaintiffs' attorney.[7] Plaintiffs argue that the action is timely because there was no agreement reached during the January 5, 1995, meeting of the Wage Scale Committee, and that the limitations period did not begin to run until later meetings of the Contract Board and the Wage Scale Committee, held in March of 1995, revealed the alleged breach of the duty of fair representation. On the second theory, Plaintiffs concede that the Contract Board is the appropriate arbitration body to resolve disputes between the parties regarding interpretation of the CBAs. They contend, however, that this dispute falls into an exception to the finality rule for claims alleging a breach of the duty of fair representation. For the reasons articulated below, the Court agrees with Plaintiffs on both counts, and therefore **DENIES** the Employer Defendants' motion for summary judgment.[8]

### A. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate

---

**4.** At best, the September 5, 1995, meeting may affect any calculation of damages. Should the Employer Defendants wish to assert that the subsequent ratification of the March 9, 1995, meeting limited Plaintiffs' damage claim to wages lost during the time between the two meetings, they may assert that argument at an appropriate time.

**5.** *See supra* note 4.

**6.** Of course, Plaintiffs' affidavits and argument in support of its motion to strike are also immaterial to the summary judgment motion and will not be considered by the Court on that motion.

**7.** Hennessy's affidavit details the difficulties the parties have encountered during discovery and is irrelevant to the Court's ruling on the substance of the summary judgment motion. Counsel is cautioned to refrain from issuing unnecessary affidavits, as he cannot be both an attorney and a witness in the same case.

**8.** In addition to opposing the substantive grounds for summary judgment, Plaintiffs assert that the motion is premature because discovery has not yet taken place, and that the affidavits supporting Defendants' motions are partially incompetent, as they are based on hearsay and lack

only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by Plaintiffs to rebut Defendants' motion with such evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

### B. Plaintiffs' Claim is Not Barred by the Statute of Limitations

Plaintiffs' claim is similar to one brought by Local 1624 in a case decided by this Court earlier in the year. *International Longshoremen's Ass'n, Steamship Clerks Local 1624 AFL–CIO v. Virginia Int'l Terminals, Inc.,* No. 2:95cv274 (E.D.Va., May 22, 1995). That case also involved a claim that Defendant Brown had breached his duty to represent the local union fairly, and that VIT, as an employer, had subsequently breached its CBA with the union. Such claims, which allege both an employer's breach of a CBA and a breach of the duty of fair representation by the union, are characterized as "hybrid § 301/fair representation claim[s]". *DelCostello v. International Bhd. of Team-*

*sters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 66, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981)); *see also Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) (stating that where an employee's union has acted against the employee's interests and breached the duty of fair representation, the employee has a cause of action against the employer and the union); *Kolomick v. United Steelworkers of Am., Dist. 8, AFL–CIO,* 762 F.2d 354, 355 n. 2 (4th Cir.1985) (describing the statutory bases of the hybrid action). In *DelCostello* the Supreme Court examined the application of the statute of limitations to such hybrid suits. *DelCostello,* 462 U.S. at 158–72, 103 S.Ct. at 2287–95. The Court held that the applicable statute in such cases would be the six-month period established by section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *Id.* at 169, 103 S.Ct. at 2293; *see also Sheet Metal Workers Int'l Ass'n v. Power City Plumbing & Heating, Inc.,* 934 F.2d 557, 560 (4th Cir.1991) (discussing the rationale of *DelCostello* in deciding to adopt federal three-month limitations period for actions to enforce arbitration agreements where no state law applied).

■ In the case of a hybrid section 301/ duty of fair representation claim, the limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violations]" *Metz v. Tootsie Roll Indus., Inc.,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *see also Mallory v. Ingersoll–Rand Co.,* 621 F.Supp. 1040, 1044–45 (W.D.Va.1985) (applying the *Metz* analysis to a hybrid claim).

■ Applying that standard, which was adopted by this Court in the prior suit between Local 1624 and VIT, the Employer Defendants argue that Plaintiffs' cause of action accrued when the ILA Wage Scale Committee voted to approve the new flextime proposal, which they claim was on Janu-

foundation. Due to the Court's ruling on the substance of the motion, the Court need not

address in detail these additional arguments.

ary 5, 1995. See Def.Memo.Supp.Sum.J. at 8; Tarkenton Aff. Ex. H. They contend that the gravamen of Plaintiffs' complaint concerns a breach of the duty of fair representation during the union's negotiation of the disputed flex-time provision. As such, it follows that a cause of action arising from that breach would accrue upon the approval of the agreement by the ILA Wage Scale Committee.

This argument fails for two reasons. First, viewing the affidavits and exhibits presented in the light most favorable to Plaintiffs as the non-moving party, the Court finds that the ILA Wage Scale Committee did not fully approve the flex-time proposal on January 5, 1995. Secondly, Defendant Brown's alleged breach of his duty of fair representation arises mainly from allegations of wrongdoing which occurred after the January meeting.

■■■ Defendants principally rely on a letter from Defendant Brown to VIT's Lynn Tarkenton, as evidence of the Wage Scale Committee's approval of the plan on January 5, 1995. Tarkenton Aff. Ex. H. In fact, the letter supports the opposite conclusion. The letter contains a point-by-point response to the Tarkenton flex-time proposal and concludes with the phrase, "I await your response to these counter proposals." *Id.* This language contradicts any argument that negotiation of the flex-time plan was concluded during the January 5, 1995, meeting. The only other evidence of the Wage Scale Committee's approval on that date comes from the affidavits of Tarkenton and Weaver, neither of whom were present at the meeting. Both describe learning of the committee's approval, either through Brown's letter to Tarkenton, or discussions with him about the proposed changes at the VIT-operated terminals.[9] Weaver Aff. ¶¶ 3, 4; Tarkenton Aff. ¶ 8. Ex. H.

Plaintiffs, by contrast, have provided the affidavits of Capps and Sidwell, both of whom were present at the Wage Scale Meeting on January 5, 1995. Both Capps and Sidwell contend that members of the Wage Scale Committee discussed the flex-time proposal, but that no decision was made. Capps Aff. at ¶ 3; Sidwell Aff. at ¶ 2. Both claim that ILA approval of the proposal was not final until a vote during a March 22, 1995, meeting. Capps Aff. at ¶ 7; Sidwell Aff. at 7. They explicitly aver that the January meeting, and the discussions between the parties which followed that meeting, were negotiation, and that Brown had not yet revealed his alleged bias against their position. Capps Aff. ¶ 5; Sidwell Aff. ¶ 4; *see* Weaver Aff. ¶ 5; Tarkenton Aff. ¶ 9. Viewing all this in the light most favorable to the non-moving party, the Court finds that the ILA Wage Scale Committee did not approve the entire flex-time proposal at the January 5, 1995, meeting, or during any other meetings in January. Consequently, Plaintiffs were not put on notice of any alleged breach of the duty of fair representation by the matters discussed during those meetings.

Secondly, Plaintiffs' allegations of a breach of the duty of fair representation against Defendants ILA and Brown arise principally from conduct which occurred after the Wage Scale Meeting of January 5, 1995, and the subsequent January negotiations. Notably, Plaintiffs aver that Defendant Brown deliberately misrepresented his position on the flex-time issue prior to a meeting of the Contract Board in June of 1995, Sidwell Aff. at ¶¶ 11, 15; that he permitted non-affected locals to participate in the March 22, 1995, vote of the Wage Scale Committee on the flex-time proposal in contravention of ILA policy, Sidwell Aff. at ¶ 7; Capps Aff. at ¶ 7; that he denied Plaintiffs the right to vote by proxy for absent members during the March 22 meeting, a right which had previously been routinely allowed, Capps Aff. at ¶ 7; Sidwell Aff. at ¶ 7; and that he refused a routine request to reschedule a discussion of the flex-time proposal, which was scheduled on a date when Capps was unavailable. Capps.Aff. ¶ 6. Without passing on the merits or sufficiency

---

9. Plaintiffs memorandum opposing the motion points out that such second hand information in affidavits is inadmissible hearsay. *See, e.g., Weaver v. Phoenix Home Life Mut. Ins. Co.,* 990 F.2d 154, 159 (4th Cir.1993). However, because

Plaintiffs also rely on Brown's letter to Tarkenton, the letter itself—unless its authenticity is challenged—is admissible as the admission of a party opponent. Fed.R.Evid. 801(d)(2).

of these allegations, the Court concludes that the gravamen of Plaintiffs' complaint in this case involves Brown's representation at the second meeting of the Wage Scale Committee, on March 22, 1995, and at the meetings of the Contract Board which approved the disputed agreement on March 9, 1995, and again on June 13, 1995. The statute of limitations, therefore, did not begin to run on their claim until, at the earliest, March 9, 1995, when the Contract Board initially approved the flex-time plan. Moreover, the final approval by the ILA and the HRSA, as bargaining agent for the employers, did not occur until the flex-time provision was implemented by a written agreement dated March 27, 1995. Tarkenton Aff. Ex. N. Accordingly, the filing of this action on July 31, 1995, was within the six-month period of limitation prescribed for such claims, and the Employer Defendants' motion for summary judgment is **DENIED** on this ground.

### C. Applicability of the Finality Rule Exception

■ The Employer Defendants next argue that Plaintiffs' claim must fail because the approval of the Contract Board is final and binding on the parties. Tarkenton Aff. ¶ 3; Giesinger Aff. ¶ 6–7. It is true that arbitration proceedings, which by contract are binding on the parties, are ordinarily not subject to judicial review in federal court. *See, e.g., Humphrey v. Moore*, 375 U.S. 335, 351, 84 S.Ct. 363, 372–73, 11 L.Ed.2d 370 (1964); *Drivers Union v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963); *Hardee v. North Carolina Allstate Servs., Inc.*, 537 F.2d 1255, 1258 (4th Cir.1976). However, as both parties acknowledge, an exception to the finality rule applies in cases where a breach of the union's duty of fair representation is alleged. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *Hardee*, 537 F.2d at 1258. As the discussion above indicates, Plaintiffs have clearly alleged a breach of the duty of fair representation. The sufficiency of those allegations, although not challenged by Defendant Brown, is critical to the resolution of this motion. The success of Plaintiffs' duty of fair representation claim is a necessary

prerequisite to maintaining this action in the face of the final and binding Contract Board decision to affirm the flex-time proposal. *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732; *Hope v. Continental Baking Co.*, 729 F.Supp. 1556, 1558 (E.D.Va.1990).

■ The Employer Defendants contend that the allegations against Brown are insufficient as a matter of law, and therefore the claim against them must fail. While in agreement with the applicable law, the Court is unable to conclude that Plaintiffs' allegations fail, as a matter of law, to state a claim against Brown for breach of his duty of fair representation.

■ In order to establish a claim for breach of a union's duty of fair representation, a plaintiff must show that his grievance has been handled perfunctorily, or in bad faith, and that "there is substantial reason to believe that a union breach of duty *contributed to* an erroneous outcome in the contractual proceedings." *Hardee*, 537 F.2d at 1258 (emphasis added). Thus, it is not necessary for Plaintiffs to show that the outcome would have been different, only that the union's breach made some unfavorable impact on the proceeding under attack. A breach of the union's duty occurs when a union's conduct toward a member is "arbitrary, discriminatory or in bad faith." *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 890 (4th Cir.1980). A union must "treat all factions and segments of its membership without hostility or discrimination." *Id.* (quoting *Griffin v. International Union, United Auto. A. & A.I.W.*, 469 F.2d 181, 183 (4th Cir.1972)). Simple negligence, ineffectiveness, or poor judgment, however, will not establish a fair representation claim, rather "the union's conduct must be 'grossly deficient' or in reckless disregard of the members' rights." *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411 (4th Cir.1986) (quoting *Wyatt*, 623 F.2d at 891).

Applying these rules to the facts as attested by the parties in this case, and viewing those facts in the light most favorable to Plaintiffs, the Court concludes that there are genuine issues of material fact regarding

whether Plaintiffs were fairly represented by Defendant Brown, thus precluding summary judgment at this stage.

The Employer Defendants place great emphasis on the Supreme Court's decision in *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). In *Humphrey*, the Court considered a claim by aggrieved union employees of a trucking company. The company was about to absorb certain routes of a rival company whose drivers were represented by the same union. When the plaintiffs sought assurances from a union officer that their seniority would be protected in the acquisition, he purportedly told them they had "nothing to worry about," believing the drivers for the acquired company would not be entitled to preserve their seniority. *Id.* at 336–37, 84 S.Ct. at 365. Later, after learning the true nature of the transaction, the same officer argued in support of preserving seniority of the acquired company drivers, when the issue was referred to an arbitration hearing. The Court found the evidence did not support the plaintiffs' earlier allegations of dishonesty and connivance on the part of the union officer, and the Court reversed a lower court injunction blocking implementation of the arbitration board's decision. *Id.* at 348–51, 84 S.Ct. at 371–73.

It is true, as the Employer Defendants argue, that one of Plaintiffs' allegations here is similar to the one at issue in *Humphrey*. However, unlike the allegation in *Humphrey*, the Court here must consider all of Plaintiffs' attested facts in the light most favorable to them as the non-moving party. In *Humphrey*, the Supreme Court reviewed a full record after a hearing and appeal in state court, and the *evidence in that record* revealed that the union officer had made his earlier assurances on inadequate information. When he later learned the true nature of the agreement between the two companies, he changed his position, believing in good faith the latter course was the correct one. *Id.* at 348, 84 S.Ct. at 371. Here, the procedural posture is quite different. At this summary judgment stage Plaintiffs have not had an opportunity to adduce evidence through discovery on this claim. Moreover, there are no affidavits from Defendant Brown or any other representative of the ILA which dispute Plaintiffs' attested allegations of misconduct.

In addition, the allegation regarding Brown's change in position, which is similar to the one at issue in *Humphrey*, is only one of several cited by Plaintiffs, which give rise to the alleged breach of his duty of fair representation. Among others are his deliberate attempts to manipulate the vote on flex-time by excluding covered union representatives from voting on the matter; denying proxy votes to both Local 1970 and 1624; and permitting non-affected locals to vote on the matter in contravention of ILA policy. These actions allegedly violate the terms of the ILA constitution as well as the contractual provisions by which the parties agreed to resolve disputes.

Taken together, and viewed in the light most favorable to Plaintiffs, these allegations present a picture of the flex-time approval as a process orchestrated by Defendant Brown to the virtual exclusion of the members most affected by the change. Such a scheme, if proven, would greatly reduce Plaintiffs' voice in the Contract Board and Wage Scale Committee proceedings, and would certainly constitute a breach of the duty of fair representation. Accordingly, the Court finds that Plaintiffs have stated a claim for breach of the duty of fair representation against Defendants Brown and the ILA. To the extent Plaintiffs are able to prove such a breach, the Court may consider the propriety of the Contract Board's decision on the flex-time proposal. Therefore, the Employer Defendants' motion for summary judgment is **DENIED** on this ground.

## IV. CONCLUSION

The Employer Defendants' reply brief and accompanying affidavits are not pleadings within the meaning of Rule 12(f). Consequently, Plaintiffs' motion to strike the brief and affidavits is **DENIED.** However, the brief raises irrelevant issues which are not material to the resolution of the pending motion and, for the reasons articulated above, the Court has not considered it in deciding the summary judgment motion.

Plaintiffs' hybrid section 301/duty of fair representation claim accrued no earlier than March 9, 1995, when the ILA/HRSA Contract Board initially approved the flex-time proposal. Therefore, the six-month statute of limitations period had not expired when this action was filed on July 31, 1995. In addition, Plaintiffs' claim that Defendant Brown breached his duty of fair representation lifts the finality bar ordinarily applicable to binding decisions of the union's arbitral body. For these reasons, the Employer Defendants' motion for summary judgment is **DENIED.**

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so ORDERED.